# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4838 | **DATE** | 4/7/2004 |
| **CASE TITLE** | SIEW TIONG GOH vs. CRE ACQUISITION, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Upon reconsideration, the court affirms its ruling finding the e-mail from March 29, 2002 and the report from April 3, 2002 to be privileged. The court reverses its decision regarding the e-mails from April 1, 2002 - they are not privileged.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | 4-08-04 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 23 |
| | Mail AO 450 form. | | 6-1 | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | | | date mailed notice | |
| LG | courtroom deputy's initials | | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SIEW TIONG GOH, )
)
Plaintiff, )
)
vs. )  No. 02 C 4838
)
CRE ACQUISITION, INC., CLARK RETAIL )
ENTERPRISES, INC., and CNC )
CNC ELECTRONICS, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

On October 1, 2003, the court viewed three documents – an e-mail from March 29, 2002, a series of e-mails from April 1, 2002, and a report dated April 3, 2002 – and agreed that defendant Clark Retail Enterprises, Inc. (Clark) could withhold production of those documents. Plaintiff has moved for reconsideration (which is not the usual such motion, because he has not been previously heard on the matter).

The various communicators and recipients have not been specifically identified except by assertions of counsel. Those assertions, however, are consistent with the nature of the communications, and we accept them for now, subject to verification through discovery. Those communications are, in general, communications between persons at the defendant responsible for risk analysis, and between those persons and the defendant's insurer, Liberty Mutual. The e-mails are actually seven in number and were sent over four days, but only the e-mails from two days are contested. They began on March 28, 2002, when Smith-Pfeiffer, Claim Risk Coordinator at defendant, advised Noreen Klink, Manager, Risk and Insurance – with copies to two others – of prior incidents. That e-mail is not claimed to be privileged, and clearly its factual content is not: there had

DOCKETED
APR 0 8 2004

22

been six incidents where customers had fallen down the stairs since April 2000, and five were forwarded to the insurance company.

On March 29, 2002, Klink responded to Jeff Smith and Ken Ruona, both in Clark management, with copies to Smith-Pfeiffer and Joseph Sullivan, attorney and director of legal services for Clark. The e-mail was noted as "Confidential Attorney Work Product." Defendant claims privileges. The following day Jeff Smith responded to Klink that the "insurance companies [sic] suggestion would be appreciated." Defendant does not claim privileges. On April 1, 2002, Klink twice sent e-mails to Liberty Mutual personnel, including Richard Taylor, and, in between, Taylor responded. Defendant claims privileges. In addition to the e-mails, defendants claim privileges for a report Taylor sent to Klink on April 3, 2002, relating to a modification of the stairway.

In this diversity case the parties agree that Illinois privilege law controls, but Illinois privilege law is not a model of clarity. We begin by observing that Illinois does not have a self-critical analysis privilege, or at least the parties have not directed us to any cases upholding such a privilege, and we have found none. Even there the privilege protects only subjective evaluations, not objective data. Indeed, we begin with the notion that a party cannot protect factual evidence from discovery by sending the evidence to an attorney or having the attorney do the investigating.

The Illinois cases seek to thread their way among competing interests, with an eye upon the real world. Business enterprises are generally covered by insurance. When an injury occurs, those responsible in the business, mindful that litigation may follow, notify the insurance carrier. The insurance carrier, having an obligation to defend, investigates. That may include taking statements of witnesses and, if litigation results, those statements are turned over to the attorney selected by the carrier to defend. Those statements are generally protected by the attorney-client privilege, <u>People</u>

v. Ryan, 30 Ill.2d 456, 197 N.E.2d 15 (1964); Lower v. Rucker, 217 Ill. App. 3d 1, 576 N.E.2d 422, 159 Ill. Dec. 753 (Ill. App. 2 Dist. 1991), or, in the case of third party witnesses, by the work product privilege. The carrier, in short, is treated as the agent of the attorney, acting on behalf of the insured.

But what if the issue relates to a report providing information to the insured about some problem? If the report is about potential liability for some claim made to the decision-makers – the control group, who will be coordinating the defense with the company's attorney – it is privileged (although the objective facts are not), just as summaries of interviews furnished to a decision-maker for transmission to an attorney is privileged, *see* Mlynarski v. Rush Presbyterian-St. Luke's Medical Center, 213 Ill. App. 3d 427, 572 N.E.2d 1025, 157 Ill. Dec. 561 (Ill. App. 1 Dist. 1991), *but see* Chicago Trust Co. v. Cook County Hospital, 298 Ill. App. 3d 396, 698 N.E.2d 641, 232 Ill. Dec. 550 (Ill. App. 1 Dist. 1998). The control group includes individuals who advise the decision-makers of a company, but it extends no further. An evaluation from an employee who reports to an advisor to a decision-maker is not privileged because that employee falls outside the control group. *See* Consolidation Coal Co. v. Bucyrus-Erie Co., 89 Ill.2d 103, 120, 432 N.E.2d 250, 50 Ill. Dec. 666 (1982); Mlynarski 213 Ill. App. 3d at 431. Exactly why that is so is not readily apparent. If the evaluation was made for the ultimate guidance of counsel, the reasons are consistent with protection. It may well be that the Illinois Supreme Court was concerned that any widening of the zone of protection would introduce too large an opportunity to shield information. Our function is not to agree with what the Illinois courts would do but to follow what we believe they would  do in the circumstances presented.

And then there is Archer-Daniels Midland Co. v. Koppers Co., Inc., 138 Ill. App. 3d 276, 485 N.E.2d 1301, 93 Ill. Dec. 91 (Ill. App. 1 Dist. 1985), where the report was made to in-house counsel and marked confidential, but it was deemed not privileged. Perhaps that was so because the report

was, apparently, primarily an account of objective facts. Perhaps it was because it was primarily for internal purposes, to determine whether other owners shall be notified so as to reduce potential risks. There are echoes of the latter in <u>Rapps v. Keldermans</u>, 257 Ill. App. 3d 205, 628 N.E.2d 818, 195 Ill. Dec. 354 (Ill. App. 1 Dist. 1993).

The communications here seem to fall somewhere between information deemed by Illinois courts to be protected and information not protected. We find that the attorney-client privilege does apply to the e-mail of March 29, 2002. The e-mail was sent by Klink to counsel and members of defendant's control group. Though the e-mail is not Confidential Attorney Work Product (as marked) because it does not contain the mental impression of an attorney, it does express typical concerns a client would address to a lawyer. The e-mails of April 1, however, are not protected by attorney-client privilege. Defendant's attorney is not a recipient of these e-mails, and even though they are an exchange between an insurer and insured, their content discloses no more than an objective fact, a meeting between individuals at defendant's gas station. This leaves the report from April 3.

Though the report is not a clear-cut example of a document that Illinois courts seek to protect, we find that it is protected under the attorney-client privilege which extends to insureds and insurers. To assert a privilege for a communication between an insured and an insurer, one must establish: "(1) the insured's identity; (2) the insurance carrier's identity; (3) the insurance carrier's duty to defend the insured; and (4) that a communication was made between insured and an agent of the insurance carrier." <u>Exline v. Exline</u>, 277 Ill. App. 3d 10, 13, 659 N.E.2d 407, 410, 213 Ill. Dec. 491, 494 (Ill. App. 2 Dist. 1995) (citing <u>Rapps</u>, 257 Ill. App. 3d at 212). The report prepared by Taylor and sent to Klink was a communication between an insured and an agent of the insurance carrier, which had a duty to defend Clark. Plaintiff contends that this report does not fall under the insured-

insurer privilege because it was prepared before the injury that led to this lawsuit. The report is, in one sense, for internal use – what modifications are feasible – and does not relate to the potential defense against claims or any evaluation of those claims. However, at the time the report was made there was the possibility that Clark would be made the defendant in a lawsuit involving the stairs. In fact, there were claims pending against Clark arising out of injuries on the stairs, and apparently one or more had ripened into litigation.

In Lower v. Rucker, the Illinois Appellate Court held that a third party's statement to her insured was privileged even though she was not a defendant subject to suit because "the possibility existed that she would be made a defendant in lawsuits that might arise as a result of the accident, and she could reasonably assume the statements made to her insurer would be transmitted to an attorney for the protection of her own interest." 217 Ill. App. 3d at 3. When Liberty Mutual prepared its report regarding the stairs at the Clark gas station, Clark was aware of the possibility of lawsuits (as well as the reality of them) due to the condition of the stairs, and it could reasonably assume that this report would be given to an attorney charged with protecting its interests.

Upon reconsideration, the court affirms its ruling finding the e-mail from March 29, 2002 and the report from April 3, 2002 to be privileged. The court reverses its decision regarding the e-mails from April 1, 2002 – they are not privileged.

James B. Moran
**JAMES B. MORAN**
**Senior Judge, U. S. District Court**

April 7, 2004.